# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY GARDNER, | : | |
|     Plaintiff, | : | 1:18-cv-2285 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| SECRETARY JOHN E. WETZEL, | : | |
|     Defendant. | : | |

## **MEMORANDUM**

## **March 16, 2020**

## I. **BACKGROUND**

Plaintiff Anthony Gardner ("Gardner"), an inmate incarcerated at the State Correctional Institution at Dallas (SCI-Dallas), commenced this action on November 29, 2018, pursuant to 42 U.S.C. § 1983, challenging the constitutionality of a legal mail policy implemented by the Pennsylvania Department of Corrections ("DOC") in September 2018. The sole Defendant is the Secretary of the DOC, John Wetzel.

Presently pending is Defendant's motion (Doc. 25) for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] For the reasons set forth below, the Court will grant Defendant's motion.

---

[1] Because Defendants relied on documents outside the pleadings in arguing that Gardner's claim for injunctive relief is moot, they recognize in their supporting brief that pursuant to Federal Rule of Civil Procedure 12(d), the Court may treat the Rule 12 motion to dismiss as a motion for summary judgment under Rule 56. (Doc. 26, p. 5).

## II. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own

pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

### III. STATEMENT OF MATERIAL FACTS

#### A. Injunctive Relief

Gardner seeks to enjoin Defendant Wetzel from unlawfully seizing, copying

and destroying legal mail pursuant to the DOC policy, DC-ADM 803, effective October 3, 2018. (Doc. 1, pp. 3, 4). The Court approved a Settlement Agreement on March 25, 2019, between the DOC and the Plaintiffs in the matter of 1:18-cv-2100, *PILP, et al. v. Wetzel, et al.*, addressing the parties' challenges to the DOC's legal mail policy, DC-ADM 803 (effective October 3, 2018). As of April 6, 2019, the DOC ceased copying legal mail and reinstituted the procedures governing the inspection and delivery of legal mail utilized prior to September 2018. *See* Exhibit F, DC-ADM 803, Inmate Mail and Incoming Publications (Section 1 updated on April 6, 2019 to conform to the Settlement Agreement). Additionally, any legal mail saved by the DOC was destroyed or returned to the sender. *Id.*; *see also* Exhibit E, Settlement Agreement for 1:18-cv-2285.

### B. Exhaustion of Administrative Remedies

DOC inmates are notified of the Inmate Grievance System policy, DC-ADM-804, in the Inmate Handbook. (Doc. 28, ¶ 6, 7). The policy is intended to deal with a wide range of issues, procedures, or events that are of concern to the inmate who is personally affected by a DOC or facility action and policy. (*Id.* at 8, 10). Because it provides formal resolution of an inmate's issues or concerns, inmates are encouraged to first try informal avenues, such as communicating with the staff at his or her institution prior to filing a grievance. (*Id.* at 9, 11). If

informal avenues prove unsuccessful, the policy provides a three-step process for resolution of inmate grievances: (1) the initial grievance and staff response that must be submitted to the Facility Grievance Coordinator; (2) the appeal to the Facility Manager or Superintendent and response; and (3) and the final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") and response. (*Id.* at 12).

If the inmate is dissatisfied with the decision of the Grievance Coordinator, he may appeal to the Facility Manager. (*Id.*) If dissatisfied with the outcome of that appeal, he may seek review with the SOIGA, which is the final level of appeal from a grievance under the DOC's Inmate Grievance System. (*Id.* at 13, 14).

Kyle Fagan ("Fagan"), Assistant to the Superintendent at SCI-Dallas, is responsible for the review, tracking and referral of all grievances to an appropriate grievance officer. (*Id.* at 15). Fagan reviewed the grievance records and found that Gardner has not filed a grievance in the last five years. (*Id.* at 17).

Dorina Varner ("Varner") is the Chief for the SOIGA who, *inter alia*, is the custodian of the records of inmate grievances appealed to final review. (*Id.* at 18). Varner reviewed the grievance appeal records; there is no record of Gardner having filed any grievances. (*Id.* at 19, 20).

Gardner does not dispute the facts set forth above. Rather, he contends that he utilized other avenues of administrative exhaustion prior to suit and that 42 U.S.C. § 1997e(a) does not state that the "DOC exhaustion requirement is the only form applicable to administrative exhaustion." (Doc. 34, p. 7).

## IV. DISCUSSION

### A. Injunctive Relief

Defendant seeks dismissal of the Gardner's claim seeking to enjoin the DOC from inspecting and copying his legal mail as moot. (Doc. 26, p. 5). The amendment to DC-ADM 803, effective April 6, 2019, which ceased the seizing, copying, and destroying of legal mail, and reinstated the prior legal mail policies in place, renders Gardner's request for injunctive relief moot. *See Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 192-93 (3d Cir. 2001) ("Article III of the Constitution grants the federal courts the power to adjudicate only actual, ongoing cases or controversies."); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996) ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the merit of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."). Defendant Wetzel is entitled to an entry of summary judgment on this claim.

### B. Failure to Exhaust Administrative Remedies

Defendant also seeks an entry of summary judgment based on Gardner's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)a. The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). "A prisoner may not satisfy the ... exhaustion requirement by exhausting administrative remedies after initiating suit in federal court." *Jenkins v. Dancha*, 723 F. App'x 174, 175 (3d Cir. 2018). "If exhaustion is incomplete when an inmate files suit, dismissal is mandatory." *Ryder v. Bartholomew*, 715 F.App'x. 144, 149 (3d Cir. 2017); *see also Turner v. Sec'y Pennsylvania Dep't of Corr.*, 683 F. App'x. 180, 182 n.1 (3d Cir. 2017) ("An inmate cannot cure non-compliance with § 1997e(a) by exhausting remedies after filing his complaint."); *see also Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002) ("Whatever the parameters of 'substantial compliance' referred to [in *Nyhuis*, 204 F.3d 77–78] it does not encompass ... the filing of a suit before administrative exhaustion, however late,

has been completed. It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint." (footnote omitted)). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57.

While recognizing that the PLRA requires that prisoners comply with the procedural demands of a system created by their jailors, the United States Court of Appeals for the Third Circuit recently noted that the jailors must comply with the demands of the system they created. *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). The Court went on to hold that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." (*Id.*).

"The only limit to § 1997e(a)'s [exhaustion] mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862 (quoting § 1997e(a)). In other words, "the

exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 1858 (quoting § 1997e(a)). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* (quoting *Booth*, 532 U.S. at 737–38 (internal citations and quotation marks omitted)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (*Booth*, 532 U.S. at 738).

There exists "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. "First, ... an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates," such as when "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." *Id.* Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, administrative remedies are unavailable "when prison

administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860, 1860 n.3 (citing *Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015)).

It is undisputed that Gardner failed to exhaust his administrative remedies through the DOC's Inmate Grievance System prior to commencing this action. He takes the position that he satisfied the exhaustion requirement by availing himself of two other avenues of administrative relief, use of an administrative law judge of the Department of Justice, or the United States Postal Service (because mail is involved).[2] (Doc, 34, pp. 7, 8). It is his position that there is no requirement that he exhaust the DOC's inmate grievance system. (*Id.* at 7). He is mistaken. The PLRA clearly requires exhaustion of available administrative remedies and Gardner fails to come forward with any evidence that the DOC's Inmate Grievance System policy was not available to him. The Court will grant Defendant's motion for summary judgment.

## V. <u>CONCLUSION</u>

Based on the above, Defendant's motion (Doc. 25) for summary judgment pursuant to Federal Rule of Civil Procedure 56, will be granted.

An appropriate Order follows.

---

[2] Gardner fails to provide the Court with any documents indicating that he actually utilized these avenues of administrative review.